**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ANTOINE LEE BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00013-JSD |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Antoine Lee Boyle brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights.  The matter is now before the Court upon multiple motions filed by Plaintiff.  First, Plaintiff seeks leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs.  ECF No. 2.  Based on the financial information before the Court, the motion will be granted, and Plaintiff will be assessed an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1).  Second, Plaintiff filed a motion to amend his complaint, and he attached an amended pleading.  ECF No. 5.  As leave to amend should be freely given, the Court will grant Plaintiff's motion to amend and direct the Clerk of Court to docket separately the Amended Complaint in this matter.  *See* Fed. R. Civ. P. 15.

Because Plaintiff is now proceeding *in forma pauperis*, the Court must review his Amended Complaint under 28 U.S.C. § 1915.  Based on such review, the Court will partially dismiss the Amended Complaint but will order the Clerk to issue process or cause process to be issued on Plaintiff's Eighth Amendment deliberate indifference claim brought against Melinda Sorbello, Roxanne Rauscher, and Beth Harmon, in their individual capacities.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a state prisoner being held at the Southeast Correctional Center (SECC) in Charleston, Missouri. ECF No. 2 at 1. Plaintiff has not submitted an inmate account statement in support of his motion to proceed without prepayment, as required by 28 U.S.C. §1915(a)(2). However, his motion states that he has no job and no money in his prison account, but that family members occasionally send him money. *Id.* at 1-2. The Court notes that Plaintiff has another pending civil action in this Court in which he made a partial filing fee payment of $154.50 on September 9, 2024.[1] *Boyle v. Mo. Dep't of Corrs.*, No. 1:24-cv-00006-CDP, ECF No. 20 (E.D. Mo. filed Jan. 17, 2024). Therefore, based on the financial information before the Court, the Court will require Plaintiff to pay an initial partial filing fee of $1.00 in this matter. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the

---

[1] The Court takes judicial notice of its records regarding these related civil proceedings. *See Lockett v. United States*, 333 F. App'x 143, 144 (8th Cir. 2009) (citing *Chandler v. United States*, 378 F.2d 906, 909-10 (9th Cir. 1967) (district court can take judicial notice of its own records, even if court records are not actually brought before judge who is asked to take such judicial notice)).

court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his inmate account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## Plaintiff's Pleadings

Plaintiff filed this 42 U.S.C. § 1983 action on January 17, 2025, seeking relief against MDOC and nine current and former MDOC employees at SECC. ECF No. 1. However, on April 14, 2025—before the Court had completed any initial review of Plaintiff's pleadings—Plaintiff filed a motion to amend and attached an Amended Complaint. ECF No. 5. As discussed above, Plaintiff's motion to amend will be granted. As such, only the allegations of Plaintiff's Amended Complaint—not his original Complaint or any previously filed Supplements—will be examined under § 1915. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citing 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1476, pp. 636-37 (3d ed. 2010))); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

Plaintiff's Amended Complaint names five defendants associated with inmate medical care and treatment at SECC: (1) Centurion;[2] (2) Melinda Sorbello (nurse practitioner); (3) Roxanne Rauscher (director of nursing); (4) Beth Harmon (nurse); and (5) Joyce Wilson (doctor). ECF No. 5-1 at 1-3. According to Plaintiff, defendants Sorbello, Rauscher, and Harmon are employees of

---

[2] Centurion Health contracted with MDOC, starting November 15, 2021, to provide statewide correctional healthcare – including medical and mental health services for incarcerated people at 19 correctional facilities and 2 community transition centers across the state of Missouri. *See* Centurion Health News, https://www.centurionmanagedcare.com/newsroom/centurion-health-begin-correctional-health-contract-for-missouri-department-of-corrections.html (last visited 04/30/2025).

Centurion, and Dr. Wilson is a "Centurion-contracted doctor." *Id.* at 2-3. Plaintiff additionally filed a supplement reiterating and clarifying that he brings suit against the four individual defendants in both their individual and official capacities, and against Centurion in its official capacity only. ECF No. 6.

Plaintiff's Amended Complaint asserts an Eighth Amendment deliberately indifferent medical care claim,[3] concerning the care and treatment Plaintiff received (and didn't receive) for a hand injury.[4] ECF No. 5-1 at 9-16. Sometime in December 2022, Plaintiff "sustained a serious hand injury," for which he twice "self-declared" a medical emergency. He does not state what caused the injury but that he received only a band-aid for treatment. *Id.* at 4. Subsequently, from December 2022 through 2023, Plaintiff repeatedly complained about hand pain, loss of movement, and loss of feeling in his fingertip. Plaintiff alleges that despite repeatedly complaining to defendant nurse practitioner Sorbello about these problems, she "dismissed them," "claimed they were superficial," and denied Plaintiff medical care. Sorbello only told him to do "frivolous hand exercises." Eventually Sorbello scheduled Plaintiff to see a doctor. *Id.*

---

[3] The Court notes that Plaintiff's Amended Complaint also references a claim of excessive force regarding an incident where Plaintiff was maced in December 2024. *See* ECF No. 5-1 at 13-14. However, this alleged incident of force does not involve any of the named defendants in the Amended Complaint. *Id.* at 13 (stating: "On December 4th 2024 I was maced by multiple guards" and naming non-defendants including Richard Trout, Gavin Penrod, Gunther Peters, and Unknown Smith). To the extent that Plaintiff is attempting to raise this claim in this suit, this is an unrelated claim that needs to be brought in a different lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). If Plaintiff wishes to pursue this excessive force claim against these non-defendants, he should file a different § 1983 action and name the involved parties as defendants.

[4] The Court recognizes that Plaintiff has another civil case pending in this Court, *Boyle v. Mo. Dep't of Corrs.*, No. 1:24-cv-00006-CDP (E.D. Mo. filed Jan. 17, 2024), which has a pending "Motion to Amend," seeking to add a deliberately indifferent medical care claim. *Id.* at ECF No. 49. However, it appears that Plaintiff seeks to amend his complaint in that case to include a claim concerning the allegedly deficient medical care he received after "being sprayed with mace." *Id.* at ECF No. 49 at 2. Because this case involves an injury to Plaintiff's hand, the Court believes that these cases contain unrelated legal claims. As such, an eventual ruling on Plaintiff's pending "Motion to Amend" in his other matter, should not affect the progress of this case.

Plaintiff saw a non-defendant doctor, sometime in 2023, who recommended he see an orthopedic specialist. *Id.* at 10. The specialist recommended that Plaintiff have immediate surgery but the surgeon "would not due [sic] the surgery unless DOC promised to do the requisite physical therapy that followed." According to Plaintiff, the specialist eventually "refused" to do the surgery, and after Plaintiff filed a grievance in 2024 about the delay in receiving the surgery, he was "forced" to see defendant Dr. Joyce Wilson. *Id.* at 3, 10. Dr. Wilson performed the first surgery on Plaintiff's hand on May 2, 2024, removing a severed tendon and replacing it with a "flex rod." *Id.* at 10. Following the surgery, Plaintiff alleges that nurses Sorbello and Harmon ignored his complaints of pain, increasing high blood pressure, swelling of his hand, and headaches. *Id.* at 11. Plaintiff did receive some over-the-counter pain medication.

Plaintiff asserts that before his first surgery, he was told that a second surgery would be necessary to remove the rod that they were implanting, and that this subsequent procedure should occur approximately six (6) to eight (8) weeks after the first. However, six months after the surgery, Plaintiff "found out that Beth Harmon has completely ignored [his] follow up surgery." *Id.* According to Plaintiff, Harmon was "in charge of scheduling." *Id.* at 12. Around that same time—approximately November 2024—Plaintiff was diagnosed with hypertension which he asserts was a result of the delay and denial of treatment for his high blood pressure by Sorbello. *Id.* at 11-12.

In order "to get the medical treatment and attention that [he] needed and to make the Director of Nursing Roxanne Rauscher aware of [his] serious medical needs," Plaintiff went on a hunger strike.[5] *Id.* at 11. When Plaintiff questioned Sorbello as to why his second surgery had

---

[5] Plaintiff attached exhibits on the MDOC procedures for handling a hunger strike. *See* ECF No. 5-1 at 5-8. Because it is not clear that these documents have any relevance to Plaintiff's Eighth Amendment deliberately indifferent medical care claim, they will not be discussed.

been so significantly delayed, Sorbello complained about a heavy caseload, having "other things to be concerned with," and not thinking that Plaintiff's "situation was as serious as [Plaintiff] claimed it was." *Id.* at 12.  Plaintiff repeatedly requested the second surgery to remove the rod in his hand, complaining that he could not "do any physical activity because of the discomfort." *Id.*

Plaintiff ended his hunger strike on December 20, 2024, when Rauscher "promised" Plaintiff that his second surgery "was in." *Id.* at 13.  After multiple reschedules for unstated reasons, the second surgery took place on February 26, 2025.  *Id.* at 15.  Plaintiff alleges that he was supposed to have physical therapy following the surgery, but that he only saw the therapist once to make his hand brace.  When Plaintiff complained to Rauscher about not receiving the physical therapy, he was told that "it was approved" but he still did not receive it.  *Id.*  Plaintiff alleges that the multiple delays and denials of medical care have resulted in irrevocable damage to his hand and finger and have "cost [him] a tendon out of each wrist." *Id.* at 16.

For relief, Plaintiff seeks an injunction "forcing" Defendants to provide Plaintiff with physical therapy on his hand,[6] and fifty (50) million dollars in damages.  *Id.* at 17.

## Discussion

After careful review and liberal construction of the pleadings, the Court finds that Plaintiff has provided enough factual allegations to support a claim of Eighth Amendment deliberately indifferent medical care against defendants Melinda Sorbello, Roxanne Rauscher, and Beth Harmon, in their individual capacities.  However, Plaintiff fails to provide any allegations of an unconstitutional Centurion custom or policy that would support a claim against these Centurion employees in their official capacities, or against Centurion itself.  Similarly, there are no facts

---

[6] Although Plaintiff seeks physical therapy for his hand, he also states that he was told that the "damage is done" and that no therapy is needed now.  ECF No. 5-1 at 16.

supporting a claim that Dr. Joyce Wilson acted with deliberate indifference to Plaintiff's serious medical need. As such, defendants Centurion and Dr. Wilson will be dismissed from this matter and the Court will direct that process issue against defendants Sorbello, Rauscher, and Harmon, in their individual capacities.

## I.     Eighth Amendment Deliberately Indifferent Medical Care

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).

### a. Official Capacity Claims & Defendant Centurion

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). As such, Plaintiff's official capacity claims against defendants Sorbello, Harmon, and Rauscher are actually claims against their employer, Centurion. *See* ECF No. 5-1 at 2-3 (stating that these defendants are all employed by Centurion).

Defendant Centurion is the private corporation contracted to provide medical services to prisoners at SECC.  In order to state a claim against a corporation like Centurion, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983").  *See also Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell ,* 436 U.S. at 690).

Other than naming Centurion as a defendant by writing the company name in the caption of his Amended Complaint, Plaintiff makes no assertions against this entity.  ECF No. 5-1 at 1.  Centurion is only mentioned once in Plaintiff's 'Statement of Claim,' in reference to a conversation between Plaintiff and defendant Sorbello where Plaintiff told her that he "no longer trusted her professional opinion or the standard of care [he has] been receiving from Centurion."  *Id.* at 12.  This single mention of Centurion is devoid of any allegations that a Centurion policy or custom was responsible for any alleged violation of Plaintiff's constitutional rights.  As a result, the Amended Complaint fails to state a claim upon which relief can be granted as to defendant Centurion.  *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

Similarly, Plaintiff's Amended Complaint contains no allegations that any of the individual defendants' actions towards Plaintiff were the result of a Cenurion official policy or custom. Such allegations are necessary to state an official capacity claim. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, Plaintiff's official capacity claims against defendants Sorbello, Harmon, and Rauscher, and his claim against defendant Centurion, must be dismissed for failure to state a claim.

**b. Individual Capacity Claims: Defendants Harmon, Rauscher, and Sorbello**

In this case, Plaintiff alleges that he complained for over a year about pain, loss of movement in his hand, and loss of feeling in his fingers to defendant Sorbello. He asserts that his complaints were ignored and that he was denied medical care. When Plaintiff finally saw an orthopedic specialist, a two-surgery treatment plan was recommended. By the time Plaintiff had the first surgery, seventeen (17) months had passed since he suffered the hand injury, and his hand complaints began. After the first surgery, Plaintiff complained to defendants Sorbello, Harmon, and Rauscher about pain, high blood pressure, hand swelling, headaches, and that he could not use his hand without discomfort. The first surgery was supposed to be followed by a second surgery six (6) to eight (8) weeks later. Plaintiff made multiple requests for the second surgery and even went on a hunger strike to try to get it scheduled. According to Plaintiff, defendant Harmon was responsible for surgery scheduling, and therefore, was responsible for delays in scheduling his two surgeries. Plaintiff did not receive the second surgery until nine (9) months after the first. Following the second surgery, Plaintiff asserts that he did not receive the prescribed post-surgical physical therapy. When he raised this issue with defendant Rauscher, he was told that the physical

therapy had been ordered.  Plaintiff states that he never received it.  Altogether, Plaintiff alleges that the delays and denials of medical care and treatment over this period resulted in his diagnosis of hypertension, and permanent damage to his hand.

Accepting these allegations as true, the Court finds that these factual allegations are sufficient to state an Eighth Amendment deliberate indifference claim against defendants Harmon, Rauscher, and Sorbello.  Plaintiff's hand injury was a serious medical need that required two surgeries to repair.  Even before surgery was recommended by a specialist, Plaintiff's complaints to Sorbello about loss of use of his hand should have been "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden*, 663 F.3d at 342.  Furthermore, after the surgery, Rauscher denied Plaintiff's prescribed physical therapy.  *See Dadd v. Anoka Cnty.*, 827 F.3d 749, 757 (8th Cir. 2016) ("When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow.").  As for Plaintiff's allegations regarding delay in treatment, Plaintiff asserts that the delay in having the second surgery caused pain and high blood pressure.  Overall, the delay in both surgeries and lack of prescribed post-surgical care resulted in permanent damage to Plaintiff's hand.  This is enough to survive initial review.  *See Dantzler v. Baldwin*, 133 F.4th 833, 845 (8th Cir. 2025) (discussing how a plaintiff can rely on medical records to show that a delay in medical treatment adversely affected his condition).  Plaintiff sufficiently alleges that Harmon, Rauscher, and Sorbello were aware of his serious medical needs, and they were deliberately indifferent to them, causing irreparable damage.  Plaintiff's deliberate indifference claim against Harmon, Rauscher, and Sorbello, in their individual capacities, states a plausible claim for relief under § 1983.

### c. Defendant Dr. Joyce Wilson

Plaintiff describes defendant Dr. Joyce Wilson as a Centurion-contracted surgeon who performed his two hand surgeries "outside the institution." ECF No. 5-1 at 3-4. He states that Dr. Wilson "prescribed" that he "receive therapy" after his second surgery "to ensure proper healing." *Id.* at 15. However, Plaintiff also mentions that "the surgeon"—presumably Dr. Wilson—told SECC nurses that Plaintiff no longer needs "ideal therapy" because "the damage is done." *Id.* at 16. Taking these allegations as a whole, there are no facts supporting a claim of deliberately indifferent medical care. Plaintiff does not allege any violation by Dr. Wilson. He states that she performed his surgeries and prescribed him to follow-up with physical therapy. He does not allege that she was aware of any serious medical need that she disregarded. Instead, Plaintiff alleges the opposite – that Dr. Wilson performed two successful surgeries on his hand. As there is insufficient factual basis in Plaintiff's Amended Complaint to support a deliberate indifference claim against defendant Dr. Joyce Wilson, she will be dismissed from this matter.

### Conclusion

Plaintiff's motion to proceed *in forma pauperis* will be granted and he will be assessed an initial partial filing fee of $1.00. Plaintiff's motion to amend will also be granted and his Amended Complaint will be docketed separately. Based on a review of the Amended Complaint under 28 U.S.C. § 1915, defendants Centurion and Dr. Joyce Wilson, and all of Plaintiff's official-capacity claims, will be dismissed for failure to state a claim. However, the Court will direct that the Clerk of Court issue process or cause to process to issue on Plaintiff's Eighth Amendment deliberate indifference claims against defendants Melinda Sorbello, Roxanne Rauscher, and Beth Harmon, in their individual capacities.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend [ECF No. 5] is **GRANTED**. The Clerk of Court is directed to docket the Amended Complaint separately in this matter.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Amended Complaint as to defendants Centurion and Dr. Joyce Wilson because, as to these defendants, the Amended Complaint fails to state a claim upon which relief can be granted. Defendants Centurion and Dr. Joyce Wilson are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the Amended Complaint as to defendants Melinda Sorbello, Roxanne Rauscher, and Beth Harmon, pursuant to the service agreement that the Court maintains with Centurion, as to Plaintiff's Eighth Amendment claims brought against these defendants in their individual capacities.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 7th day of May, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE