**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ANTOINE LEE BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00013-CMS |
| | ) | |
| MISSOURI DEPARTMENT OF CORRECTIONS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM, AND ORDER

This matter is before the Court on Defendants Melinda Sorbello, Roxanne Rauscher, and Beth Harmon's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 23). This Court **GRANTS** Defendants' Motion on all of Plaintiff Antoine Lee Boyle's claims.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff brings this action on a court-provided prisoner civil rights complaint form under 42 U.S.C. § 1983. He names as defendants: Melinda Sorbello, Roxanne Rauscher, and Beth Harmon, among others.[1] He sues these remaining defendants in their individual capacities.[2]

---

[1] On May 7, 2025, Senior District Judge Stephen N. Limbaugh, Jr., entered an order dismissing all of Plaintiff's claims against Centurion Health and Joyce Wilson. (Doc. 9). All other defendants were terminated in the amended complaint. (Doc. 8).
[2] Judge Limbaugh dismissed Plaintiff's official capacity claims against defendants Sorbello, Rauscher, and Harmon without prejudice on May 7, 2025. (Doc. 9).

## I. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need.

According to Plaintiff, sometime in December 2022, he "sustained a serious hand injury," which he twice "self-declared" as a medical emergency. (Doc. 8 at 4). He does not state what caused the injury but claims he received only a band-aid for treatment. *Id.* at 4. Subsequently, from December 2022 through 2023, Plaintiff repeatedly complained about hand pain, loss of movement, and loss of feeling in his fingertip. *Id.* at 9. Plaintiff alleges that Defendant Sorbello, a nurse at the facility, dismissed his complaints, claimed his injury was superficial, and denied Plaintiff medical care. *Id.* Eventually, Defendant Sorbello scheduled Plaintiff to see a doctor. *Id.*

When Plaintiff saw a doctor sometime in 2023, the doctor recommended he see an orthopedic specialist. *Id.* at 10. The specialist recommended that Plaintiff have immediate surgery but "would not due [sic] the surgery unless DOC promised to do the requisite physical therapy that followed." *Id.* According to Plaintiff, the specialist eventually refused to do the surgery, and after Plaintiff filed a grievance in 2024 about the delay in receiving the surgery, he was "forced" to see Dr. Joyce Wilson, previously a Defendant in this case. *Id.* at 3, 10.

Dr. Wilson performed the first surgery on Plaintiff's hand on May 2, 2024, removing a severed tendon and replacing it with a "flex rod." *Id.* at 10. Plaintiff alleges that, following the surgery, Defendants Sorbello and Harmon ignored his complaints of pain, increasing high blood pressure, swelling of his hand, and headaches. *Id.* at 11. Plaintiff received only over-the-counter pain medication. *Id.*

In order "to get the medical treatment and attention that [he] needed and to make [Defendant] Rauscher aware of [his] serious medical needs," Plaintiff went on a hunger strike. *Id.* at 11. When Plaintiff asked Defendant Sorbello why his second surgery was delayed, she complained about a heavy caseload, having "other things to be concerned with," and that Plaintiff's situation was not as serious as Plaintiff claimed. *Id.* at 12. Plaintiff repeatedly requested the second surgery, complaining that he could not engage in any physical activity because of the discomfort. *Id.* Plaintiff ended his hunger strike on December 20, 2024, when Defendant Rauscher "promised" Plaintiff that his second surgery "was in." *Id.* at 13.

After multiple delays, the second surgery took place on February 26, 2025. *Id.* at 15. Plaintiff alleges that he was supposed to have physical therapy following the surgery, but that he only saw the therapist once to make his hand brace. *Id.* Plaintiff complained to Defendant Rauscher about not receiving the physical therapy but still did not receive it. *Id.* Plaintiff alleges that the multiple delays and denials of medical care have resulted in irrevocable damage to his hand and finger and have "cost [him] a tendon out of each wrist." *Id.* at 16.

In an order dated May 7, 2025, Judge Limbaugh found that Plaintiff's Amended Complaint raised a claim for deliberately indifferent denial of medical care pursuant to the Eighth Amendment and 42 U.S.C. § 1983. (Doc. 7 at 7). For relief, Plaintiff seeks an injunction "forcing" Defendants to provide Plaintiff with physical therapy on his hand, and fifty (50) million dollars in damages. (Doc. 8 at 17).

## II. Defendants' Motion for Summary Judgment

After discovery was completed, Defendants moved for summary judgment. (Doc. 23). Defendants asserted that summary judgment on all remaining claims was proper because: (1) Plaintiff could not make a *prima facie* case that defendants Sorbello, Rauscher, and Harmon were deliberately indifferent to Plaintiff's serious medical needs; and (2) Plaintiff failed to timely exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA). (Doc. 25 at 3). Along with their Motion and Memorandum in Support, Defendants filed a Statement of Uncontroverted Material Facts. (Doc. 24).

On July 24, 2025, Judge Limbaugh ordered Plaintiff to make initial discovery disclosures by August 20, 2025. (Doc. 19 at 1–2). Plaintiff took no action until February 23, 2026, when he filed a hand-written letter stating his finger was broken and he would not be able to use his hand for four to six weeks. (Doc. 26). He suggested he would need that long to respond to Defendants' Motion for Summary Judgment filed on February 20, 2026. (Docs. 23 and 26). One month later, he filed a motion for appointment of counsel, which was denied. (Docs. 28 and 29). To date, Plaintiff has neither complied with Judge Limbaugh's July 24, 2025, Order nor responded to Defendants' Motion for Summary Judgment or Statement of Uncontroverted Material Facts.

## III. Plaintiff's failure to respond to the Statement of Material Facts is an admission of those facts.

Material facts not properly contested are accepted as true for purposes of summary judgment. *See Jones v. United Parcel Services, Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (concluding district court "properly deemed defendants' statements admitted" when

"plaintiffs failed to provide a pleading in accordance with the rules that controverted any of the movants' facts"). Accordingly, the Court accepts as true the following facts in Defendants' Statement of Uncontroverted Material Facts.

Plaintiff first presented to Defendant Sorbello with complaints of a hand injury on August 15, 2023. (Doc. 24 at 1). Dr. Jerry Lovelace, the Statewide Medical Director, asked that Plaintiff be reassessed while uncuffed on August 21, 2023. (Doc. 24 at 1). Defendant Sorbello ordered an x-ray of Plaintiff's right hand on September 15, 2023. (Doc. 24 at 2). Plaintiff was referred to hand surgery on September 28, 2023. (Doc. 24 at 2). And on November 30, 2023, defendant Sorbello specifically referred Plaintiff to an orthopedic hand surgeon. (Doc. 24 at 2).

On January 8, 2024, Plaintiff filed an informal resolution request (IRR) requesting medical care for his hand. (Doc. 24 at 6). In that IRR, Plaintiff alleged that his surgery had been denied and requested that his surgery and therapy be approved. (Doc. 24 at 6). Plaintiff received a response to his January 2024 IRR on February 17, 2024. (Doc. 24 at 7). Plaintiff then filed a grievance report on April 29, 2024. (Doc. 24 at 7). Plaintiff received a response to his April 2024 grievance form on June 6, 2024. (Doc. 24 at 7). On June 26, 2024, Plaintiff filed a grievance appeal. (Doc. 24 at 7). Plaintiff received a response to his grievance appeal on July 12, 2024. (Doc. 24 at 7). Neither the IRR, the grievance form, nor the grievance appeal named any individuals. (Doc. 24 at 7).

Plaintiff filed an additional IRR on April 2, 2025, to which he received a response on May 6, 2025. (Doc. 24 at 8). Plaintiff did not continue with the grievance process for this IRR after the May 6 response. (Doc. 24 at 8).

After filing the January 2024 IRR, Plaintiff received medical care for his hand on the following dates: January 11, 2024 (nursing assessment), January 16, 2024 (adjustment to his pain medication), May 2, 2024 (surgery), May 10, 2024 (surgery follow-up appointment), June 18, 2024 (telehealth appointment with the orthopedic specialist and nurse assessment), August 6, 2024 (follow-up appointment with orthopedic specialist and nurse assessment), November 12, 2024 (nurse assessment), November 15, 2024 (nurse assessment), January 3, 2025 (routine labs), February 26, 2025 (second surgery), March 13, 2025 (physical therapy), and March 28, 2025 (telehealth follow-up with orthopedic specialist). (Doc. 24 at 2-6). There were also numerous occasions on which Plaintiff did not appear for his appointments or refused care. (Doc. 24 at 2-6). Plaintiff's two surgeries occurred at the times directed by Plaintiff's surgeon. (Doc. 24 at 8).

**ANALYSIS**

**I. Summary Judgment Standard**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. *Id.* at 323. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party can satisfy

its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).

According to Federal Rule of Civil Procedure 56(e), when the moving party meets his burden, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Liberty Lobby, Inc.*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The "party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256 (quoting Fed. R. Civ. P. 56(e)).

Plaintiff's failure to comply with Rule 56(e), as well as this Court's Local Rule 4.01(E), means that all of Defendants' uncontroverted material facts supported by the record are deemed admitted. *See United Parcel Services, Inc.*, 461 F.3d at 991. This Court has independently verified that all of Defendants' factual assertions are supported by the attached exhibits and the record.

## II. Defendants are entitled to summary judgment on all of Plaintiff's claims not relating to the January 2024 IRR because Plaintiff failed to exhaust his administrative remedies as required by the PLRA.

Plaintiff's failure to exhaust his administrative remedies as to claims in the April 2025 IRR and all other claims not previously raised in either of the IRRs entitles Defendants to summary judgment on those claims. The PLRA provides that a prisoner cannot bring an action under 42 U.S.C. § 1983 without first exhausting available

administrative remedies through the prison grievance process. See 42 U.S.C. § 1997e(a). "[T]he PLRA contains its own, textual exception: [A]n inmate is required to exhaust those, but only those, grievance procedures that are [available, *i.e.*,] 'capable of use' to obtain some relief for the action complained of." *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (internal quotations omitted). Moreover, proper exhaustion entails completion of the administrative review process in prison in accordance with applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93–103 (2006).

"[T]he prison's requirements, and not the PLRA, …define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Missouri Department of Corrections Offender Handbook[3] lays out the following exhaustion procedure. An individual may request an IRR from his unit staff if he has an unresolved complaint. Missouri Dep't of Corrections, OFFENDER RULEBOOK 62, https://doc.mo.gov/sites/doc/files/media/pdf/2020/03/Offender_Rulebook_REVISED_2019.pdf (last accessed July 28, 2026). The prisoner "must file this form within 15 calendar days of the incident." *Id.* Prison staff have 40 days to respond to the prisoner's IRR. *Id.* If they do not do so, the prisoner may proceed to the grievance stage. *Id.*

[3] The Court takes judicial notice of the Handbook from the Missouri Department of Corrections website. A court may take judicial notice of inmate handbooks. *See Dale v. Tyler*, 2015 WL 4167366 (D.S.D. Jul. 8, 2015) (collecting cases); see also Fed. R. Evid. 201 (allowing a court to *sua sponte* take judicial notice of a fact that is "not subject to reasonable dispute" at any point in the litigation). Still, the Court reminds Defendants (and other litigants) that the best practice is to submit an authenticated copy of an inmate handbook with their motion.

At the grievance stage, the prisoner must fill out an Offender Grievance form which must be filed within seven days from the date the Prisoner signed the IRR response. *Id.* And like the IRR stage, the prisoner may proceed to the next stage—the Grievance Appeal—if no response is received within 40 days. *Id.*

Finally, if a prisoner is not satisfied with the response to his grievance, he will be given an Offender Appeal form. *Id.* at 63. The prisoner must file the appeal form with the Grievance Officer within seven days from the date the prisoner signed the Offender Grievance Response. *Id.* An appeal response is rendered "as soon as practical, but within 100 calendar days of receipt" of the appeal form. *Id.* The grievance process is exhausted when the prisoner receives the appeal response. *Id.*

Here, Plaintiff filed a grievance as to only the January 2024 IRR, and that grievance was untimely. (Doc. 24 at 6). Plaintiff did not file his second IRR until April 2, 2025, and never filed a grievance after receiving a response to that IRR. (Doc. 24 at 7). The relevant incident for the second IRR took place on February 26, 2025. (Doc. 24 at 7). Because Plaintiff did not exhaust the grievance procedures set forth in the Offender Handbook, Plaintiff failed to exhaust his administrative remedies as to the second IRR. Also, any claims not contained in either IRR are barred for Plaintiff's failure to raise them in the grievance process. Therefore, the Court grants summary judgment on all claims relating to the April 2025 IRR and all claims not raised in either IRR. Only the claims relating to the January 2024 IRR merit further discussion.

**III. Defendants are entitled to summary judgment on Plaintiff's claims relating to the January 2024 IRR because Plaintiff has not established a genuine dispute of material fact regarding Defendants' deliberate indifference.**

Though Plaintiff untimely submitted his grievance as to the January 2024 IRR, (Doc. 25 at 11), MDOC nonetheless completed the grievance process and issued a decision on the merits. (Doc. 24 at 7). That decision inhibits Defendants from invoking the PLRA exhaustion requirements. *Hammett v. Cofield*, 681 F.3d 945, 947–48 (8th Cir. 2012).

Still, Plaintiff has not established a question of fact regarding Defendants' alleged deliberate indifference. A prisoner's Eighth Amendment rights may be violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97,104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). But "a plaintiff must show more than negligence, more even than gross negligence, to make out a constitutional violation." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (internal citations omitted).

A plaintiff must show that the prison officials actually knew of an objectively serious medical need and that, subjectively, the defendants deliberately disregarded that need. *Id.* To establish this deliberate disregard, a plaintiff must demonstrate that the defendants are responsible for a delay and took no steps to ensure that the plaintiff received the needed care. *See id.* at 1177; *Payton v. Precythe*, No. 2:21-CV-42-JAR, 2021 WL 4989490, at *3 (E.D. Mo. Oct. 26, 2021); *see also Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997) (inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment").

Contrarily, uncontested medical records are sufficient evidence that the care provided was adequate, especially when there is no medical evidence that any delay caused harm or a change in prognosis. *See Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997); *Hancock v. Arnott*, 39 F.4th 482, 487 (8th Cir. 2022). A plaintiff's opinion that he received inadequate medical care is insufficient to establish a question of fact or to refute the defendants' medical records. *Dulany*, 132 F.3d at 1240.

Here, Plaintiff alleges that Defendants deliberately disregarded his serious medical need. (Doc. 8 at 16). But according to Plaintiff's own assertions and the uncontroverted facts, Plaintiff received regular care for his hand, including two surgeries from which he healed to the point of no longer needing therapy. *See generally* (Docs. 8 and 24). Additionally, while there was a delay in the second surgery, Plaintiff has presented no evidence that Defendants contributed to that delay or that the delay harmed him or changed his prognosis. (Doc. 8 at 17) (alleging permanent damage but offering no medical evidence or expert testimony). Plaintiff's opinion that the delay caused him greater harm, with no evidence to support his claim, is insufficient. *Dulany*, 132 F.3d at 1240. Plaintiff's opinion also is successfully rebutted by Defendants' Statement of Uncontroverted Material Facts to which Plaintiff did not respond. Rather than establishing that Defendants took no steps in providing Plaintiff care, the uncontroverted facts demonstrate a long series of appointments and assessments both before and after his surgeries. *Supra* at 5–7.

In his January 2024 IRR, Plaintiff requested surgery. (Doc. 24 at 7). Since that request, Plaintiff has received two surgeries and therapy. (Doc. 24 at 2, 6). Plaintiff does not explain how any of Defendants contributed to the delay in his surgery, and the long

series of appointments demonstrates not only that Defendants were not deliberately indifferent, but that they took reasonable steps to ensure Plaintiff's care. Because Plaintiff has failed to establish Defendants' deliberate indifference, Defendants are entitled to summary judgment on Plaintiff's claim regarding the January 2024 IRR.

**IV. Alternatively, Plaintiff's claims are subject to dismissal with prejudice for Plaintiff's failure to prosecute this case.**

Even if Plaintiff had both exhausted his administrative remedies and established Defendants' deliberate indifference, Plaintiff's apparent disinterest in the case would require dismissal with prejudice. Federal Rule of Civil Procedure 41(b) states that, if the plaintiff fails to prosecute or comply with the rules or a court order, a defendant may move to dismiss the action or any claim against it. While dismissal with prejudice under this rule is an "extreme sanction," it is appropriate "where a litigant exhibits a pattern of intentional delay." *Siems v. City of* Minneapolis, 560 F.3d 824, 826 (8th Cir. 2009). This sanction does not require finding that a litigant acted in bad faith. *Hunt v. City of* Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000). Nor is a *pro se* litigant exempted from complying with court orders. *See Farnsworth v. City of Kansas* City, 863 F.2d 33, 34 (8th Cir. 1993). When a litigant fails to comply with a court order for even a single month, that delay can be sufficient to merit dismissal with prejudice. *See McClain v. Astrue*, No. 4:11CV1835 TIA, 2012 WL 5985565, at *2 (E.D. Mo. Nov. 29, 2012); *see also Schoemehl v. Unwin*, No. 4:18-CV-00031-JAR, 2019 WL 2010216, at *1 (E.D. Mo. May 7, 2019) (dismissing with prejudice after litigant failed to comply with a court order for one year).

For more than a year, Plaintiff has failed to comply with the Court's Case Management Order. He has not made initial disclosures, served discovery requests, or responded to Defendants' Motion for Summary Judgment. (Doc. 19 at 1–2). Back in February 2026, Plaintiff did suggest he needed an additional four to six weeks to respond to the Motion for Summary Judgment, (Doc. 26), but that time has long since passed. Additionally, Plaintiff's basis for that request—that he was unable to write due to a broken finger—is belied by his submission of that hand-written request, as well as another hand-written motion one month later. *Compare* (Doc. 26) *with* (Doc. 28).

Due to Plaintiff's failure to comply with the Court's orders or to otherwise take affirmative action in this case, Defendants are entitled to dismissal with prejudice for Plaintiff's failure to prosecute.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED.**

An appropriate Judgment shall accompany this Opinion, Memorandum, and Order.

Dated this 21st day of August 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE